SA:JC
F.#2014V02206

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ISRAEL WEINGARTEN,

        Petitioner,

   - against -

UNITED STATES OF AMERICA,

        Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

14-CV-5738 (JG), 08-CR-571

THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION
TO THE DEFENDANT'S MOTION TO STRIKE DECLARATIONS OF
ATTORNEYS BARRY GENE RHODES AND ALAN STUTMAN

                    LORETTA E. LYNCH
                    United States Attorney
                    Eastern District of New York
                    271 Cadman Plaza East
                    Brooklyn, New York 11201

JENNIFER S. CARAPIET
Assistant U.S. Attorney
    (Of Counsel)

INTRODUCTION

The defendant Israel Weingarten filed a habeas petition on September 30, 2014, seeking relief on at least seven separate grounds. Each of his contentions calls into question the representation provided by Weingarten's former trial counsel, Barry Rhodes and Alan Stutman. By asserting numerous ineffective assistance of counsel claims, the defendant has implicitly waived attorney-client privilege with respect to those claims. Under clear precedent in this Circuit, Mr. Rhodes and Mr. Stutman have properly defended themselves on the specific issues raised in the defendant's petition by preparing narrowly tailored responsive affidavits. This Court should deny the defendant's motion to seal, strike and forbid any use of or reference to the Rhodes and Stutman affidavits.

ARGUMENT

The defendant has alleged ineffective assistance of counsel in his habeas petition, "put[] communications between himself and his attorney directly in issue, and thus by implication waive[d] the attorney-client privilege with respect to those communications." Aladino v. United States, No. 09-cv-926, 2011 WL 6131175, at *2 (E.D.N.Y. Dec. 8, 2011) (Amon, C.J.) (quoting United States v. Marks, 764 F. Supp. 2d 585, 586-87 (W.D.N.Y. 2011); United States v. Pinson, 584 F.3d 972, 978 (10th Cir. 2009)). Courts in this Circuit routinely find an implied waiver when the client "relies on the privileged communication as a claim or defense or as an element of a claim or defense." In re Erie County, 546 F.3d 222, 228 (2d Cir. 2008). Indeed, the "Supreme Court's pathmarking ineffective-assistance case, *Strickland v. Washington*, itself hinted at this requirement." Pinson, 584 F.3d at 977-78 ("[I]nquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's . . . litigation decisions." (quoting Strickland, 466 U.S. 668,

1

691(1984))). See also In re Lott, 424 F.3d 446, 453 (6th Cir. 2005); Johnson v. Alabama, 256 F.3d 1156, 1178 (11th Cir. 2001) ("[A] party waives its attorney-client privilege when it injects into . . . litigation an issue that requires testimony from its attorneys or testimony concerning the reasonableness of its attorneys' conduct" (internal quotation marks omitted)); Giordano v. United States, No. 3:11 cv 9, 2011 WL 1831578, at *2 (D. Conn. Mar. 17, 2011); Overbaugh v. United States, 483 F. Supp. 2d 223, 225 (N.D.N.Y. 2007). That implied privilege waiver extends "to confidential information that is needed to defend against the prisoner's specific claims." Giordano, 2011 WL 1831578, at *3. Notably "[c]omplaints alleging ineffective assistance of counsel allow the responding party to explore the nature of the conversations between counsel and the accused to rebut allegations made in the present motion." United States v. Sosa-Lopez, No. 12-CV-6649L, 2013 WL 164091, at *1 (W.D.N.Y. Jan. 15, 2013). The privilege waiver "also includes any writings, memos, notes to the file, or similar materials that have a bearing on the issues raised in [the defendant's] motion." Id. at *2.

      The Second Circuit has determined that "a district court facing the question of constitutional ineffectiveness of counsel should, except in highly unusual circumstances, offer the assertedly ineffective attorney an opportunity to be heard and to present evidence, in the form of live testimony, affidavits, or briefs." Sparman v. Edwards, 154 F.3d 51, 52 (2d Cir. 1998) (per curiam) (relatedly noting that this Court permitted trial defense counsel charged with ineffectiveness to testify in his own defense at a hearing). And, in this Circuit, the form and content of that evidence has been "largely . . . left up to [defendant's] former counsel and the Government to determine whether particular information has or has not been waived." Giordano, 2011 WL 1831578, at *3. "It would be highly impractical to require

2

federal district court judges in each and every one of those cases to directly supervise every interaction between the Government and the attorney who allegedly provided ineffective assistance to his former client." Id.  That is because, as the *Giordano* court noted, in its experience, "attorneys are for the most part very familiar with the process of determining whether specific materials are protected during the course of discovery, and the process of determining whether the privilege has been waived with regard to specific documents and communications between [defendant] and his former counsel should not be much more difficult than that ordinary process." Id.

Contrary to the defendant's suggestion, this case is not "highly unusual" – the defendant has impliedly waived attorney-client privilege and trial counsel's narrowly tailored responsive affidavits should be considered.  Indeed, Weingarten has dedicated at least 80 pages of his habeas petition to attacking every utterance, misspelling and strategic judgment made by trial counsel, as well as their attorney-client meetings, preparation sessions, conversations and correspondence.  The defendant has also submitted his own affidavit in which he waives privilege, going into endless detail regarding his meetings with Mr. Stutman and Mr. Rhodes, explaining what he told his attorneys and how they responded, providing nearly every detail of their strategic choices from the start of the representation all the way through trial.  Now, the defendant has tried to impermissibly silence Mr. Stutman and Mr. Rhodes by striking their narrative of the alleged events.  Weingarten cannot be "permitted to offer a claim that his counsel ignored his requests," and failed him in countless ways on all fronts, "while simultaneously invoking privilege to prevent his counsel from contradicting [defendant's] version of the relevant events." *Aladino*, 2011 WL 6131175, at *2.  "[T]he attorney-client privilege cannot at once be used as a shield and a sword. . . . Thus, the

3

privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications." United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991).

And indeed, fairness requires that Mr. Rhodes and Mr. Stutman be able to defend themselves against the particular claims the defendant has lodged against them by way of their affidavits. In *Aladino*, the court held that petitioner's claim "that his counsel was ineffective in failing to file a requested appeal is an implicit waiver of the attorney-client privilege with respect to the communications that took place regarding an appeal." Aladino, 2011 WL 6131175, at *2. In that case, "Aladino himself ha[d] already submitted an affidavit summarizing the alleged communications at issue," as well as related exhibits. Id. That court held that "[f]airness clearly require[d]" that defense trial counsel "be allowed to offer an affidavit containing his own version of those events." Id. The court went on to hold that the defendant's "various other claims of ineffective assistance of counsel, many of which are premised on attorney-client communications" were "accompanied by an implied waiver of the attorney-client privilege that would allow [defense counsel] to respond with his own account of the relevant communications and events." Id. at *3. Mr. Rhodes and Mr. Stutman have offered affidavits that neatly track the allegations made by the defendant, addressing each allegation with narrow specificity. The 2009 affidavits are trimmed down to precisely the defendant's criticisms there and here: that he was forced to go *pro se*, that he was dissatisfied with his counsel's representation, that counsel did not conduct the investigation he wished or find the appropriate witnesses, that they mishandled the issue with the tape recordings, that their defense was flawed and they were not prepared for trial.

Likewise, the 2014 affidavits systematically address each of the defendant's allegations with great specificity.

Finally, it is worth noting that the late date that defendant's counsel has made an application to this Court to seal or strike these affidavits cuts against any alleged prejudice or harm. As it stands, the 2009 Rhodes and Stutman affidavits were filed *five years ago* as part of the Government's 09-2043-cr Brief and Appendix. Those affidavits were accepted as part of the appellate record and it is only now that the defense tries to prevent the existing affidavits from being made part of the current habeas record. With respect to the 2014 affidavits, the defendant's current counsel contend that they sent letters to Mr. Rhodes and Mr. Stutman asking them to comply with certain out-of-Circuit procedures, but the letters did not offer the New York practitioners any binding precedent explaining why they should adhere to such a request. Likewise, the Government was not made aware of those letters until the instant motion, and has no reason to believe the Court was either. This is of no matter, however, because Mr. Stutman and Mr. Rhodes are the most familiar with the minutiae raised by the defendant regarding their attorney-client communications, meetings and strategic discussions, and they are best equipped to exercise their discretion in this situation. It would be seemingly inappropriate for the defendant's current counsel to "be involved" in censoring Mr. Rhodes and Mr. Stutman or proscribing their own defense, giving the defendant control of both the sword and the shield, and undermining the adversarial process altogether. Succinctly, the Rhodes and Stutman affidavits are specifically tailored to the claims Weingarten has lodged here and they should appropriately be considered by the Court and remain openly filed in this case.

5

CONCLUSION

For the reasons stated herein, this Court should permit the use of and reference to all of Mr. Rhodes and Mr. Stutman's affidavits.


Dated: Brooklyn, New York
       January 23, 2014

                                     Respectfully submitted,

                                     LORETTA E. LYNCH
                                     United States Attorney
                                     Eastern District of New York


                     By:    /s/ Jennifer S. Carapiet
                            Jennifer S. Carapiet
                            Assistant United States Attorney