1

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK
 2
    - - - - - - - - - - - - - X
 3
    ISRAEL WEINGARTEN,          :   14-CV-5738(JG)
 4                              :
              Petitioner,       :   U.S. Courthouse
 5                              :   Brooklyn, New York
                                :
 6        -against-            :   TRANSCRIPT OF
                                :   ORAL ARGUMENT
 7                              :
                                :
 8    UNITED STATES OF AMERICA, :   January 30, 2015
                                :   12:00 p.m.
 9          Respondent.         :
                                :
10    - - - - - - - - - - - - - X

11  BEFORE:
                  HONORABLE JOHN GLEESON, U.S.D.J.
12
    APPEARANCES:
13
    For the Petitioner:     TODD W. BURNS, ESQ.
14                          RICHARD M. LIPSMAN, ESQ.
                            JODI D. THORP, ESQ.
15

16

17  For the Respondent:     LORETTA E. LYNCH, ESQ.
                            United States Attorney
18                          271 Cadman Plaza East
                            Brooklyn, New York 11201
19                          BY:  JENNIFER S. CARAPIET, ESQ.
                                 SHREVE ARIAIL, ESQ.
20                               Assistant U.S. Attorneys

21
    Court Reporter:     Holly Driscoll, CSR
22                      Official Court Reporter
                        225 Cadman Plaza East
23                      Brooklyn, New York 11201
                        (718) 613-2274
24
    Proceedings recorded by mechanical stenography, transcript
25  produced by Computer-Assisted Transcript.
```

2

1          THE COURT:  State your appearances please.

2          MS. CARAPIET:  Good morning, Your Honor, Jennifer

3   Carapiet for the United States.

4          MR. BURNS:  Good morning, Your Honor, Todd Burns on

5   behalf of Mr. Weingarten.  I'm also here with Jodi Thorp and

6   Richard Lipsman.

7          THE COURT:  Hi.  Welcome to all of you.

8          This is the oral argument on Mr. Weingarten's

9   application pursuant to Section 2255 of Title 28.

10         You want to be heard, sir?

11         MR. BURNS:  Yes, Your Honor.  There are a few points

12  that I'd like to emphasize with respect to the motion to

13  strike declarations because that's an issue that we didn't

14  file a reply on.  I'd like to start by making clear that we,

15  of course, recognize that implied waiver applies in this

16  context.  What we really disagree on is whether or not the

17  declarations that have been submitted are, as the government

18  has indicated, narrowly tailored.  We don't think that they

19  are at all.

20         My concern back in September, and looking back over

21  the record of this case and the previous declarations, was

22  that if future declarations were submitted, that they might

23  well not be narrowly tailored.  That's why I reached out to

24  Mr. Rhodes and Mr. Stutman and asked them that we pursue sort

25  of a controlled process here.  You know, among other things,

3

1    it seemed apparent to me that there's some acrimony there and

2    that creates, you know, a potential conflict and I thought it

3    was better that we be involved in that process and that the

4    Court be involved in that process, if appropriate, and that's

5    not what happened.  I think that these last batch of

6    declarations, particularly Mr. Rhodes's, are even more

7    problematic and, you know, the main District Court case that

8    the government has relied on in its papers is Giordano.  I

9    was looking at that last night and actually I think Giordano

10   pretty much, about 80 or 90 percent supports our position.

11             In that case the government went to the court and

12   asked the court to find an implied waiver.  I presume that

13   that was probably because there had been some restraint on the

14   part of former counsel saying, well, held on a second, you

15   know, I've got some ethical obligations here.  The government

16   went to the court, the court in addressing the situation

17   agreed with the Ninth Circuit's opinion in Bittaker, set up

18   some boundaries, said basically, if necessary, you can come

19   back to the court but I'm not going to supervise every

20   interaction and said that before anything is publicly filed,

21   I'll enter a protective order as appropriate.  That's pretty

22   much what we think should have happened here and what didn't

23   happen and that's the reason for the motion to strike.

24             On the -- I don't know if the Court wants me to move

25   on to other issues.

4

1          THE COURT:  Yes, please.

2          MR. BURNS:  On the other issues, you know, there's

3    some things I could emphasize in various contexts but I think

4    there's been a lot of paper so there's not a lot that I need

5    to cover that I don't feel has already been covered.

6          There is another point that occurred to me, again

7    last night in looking through the papers, and that was in the

8    context of the statute of limitations and the retroactivity;

9    one of the government's main arguments is that the first nine

10   words or so of 3283 indicate Congress's intent that the

11   amendments apply retroactively and basically what they're

12   saying is that that language not only indicates that, you

13   know, this is the statute of limitations that controls but it

14   also controls over its predecessor and that language is no

15   statute of limitations that would otherwise preclude

16   prosecution for an offense involving, etc., etc.

17         I went back and I looked at the first version of

18   that statute in 1990 which was at that point at 3509(k).  It's

19   the same language when there was no predecessor statute.  So,

20   obviously Congress in using that language wasn't meaning to

21   say this statute of limitations doesn't apply to its

22   predecessor because there was no predecessor.  What it was

23   meaning to say is that it controls over other statute of

24   limitations presently.  You know, there are other, of course,

25   good arguments as to why that argument, the government's

1    argument doesn't work there.  I think the strongest one is if

2    you look in these other contexts that I've cited with the

3    terrorism offense statute of limitations and the financial

4    crimes, Congress knows exactly how to say when it wants the

5    statute of limitations to apply retroactively, it says it

6    explicitly and clearly, including with the terrorism statute a

7    year before the amendment in this case.

8           So, you know, that's pretty much the only new

9    thing I have to add.  Again, there are several points of

10   emphasis that I'd make and one of them I think that was

11   pretty compelling is if you look at the unprepared counsel,

12   ineffective assistance claims, even if you accept what

13   Mr. Rhodes and Mr. Stutman are saying, there are just some

14   things there that really, you know, are inexcusable, not going

15   to the Brooklyn apartment and interviewing the people there

16   and looking at the scene, taking photographs, and I would say

17   not going to Belgium too, but the Brooklyn one is such an

18   obvious one, I mean it's two miles away; not doing anything

19   about the repentance letter which is just such a bombshell

20   that's dropped in the middle of trial and, you know, ends up

21   getting into the record and creating a real problem and that's

22   the first thing the jury asked to see, where they should have

23   been on top of that and prevented it from the outset.

24   Apparently what happens at trial, they haven't even read it,

25   they don't realize what's there.  Not consulting with any

1   experts, not talking to any witnesses; some of these witnesses

2   are apparent just if you look at the Family Court records,

3   including witnesses in Belgium.

4          So, you know, there are just some things here that,

5   even if you take everything in the two attorneys' declarations

6   as true, that are really inexcusable and I think that that

7   point is made very well in the declaration we submitted from

8   David Kirby.  Let's stay out of the disputes here and it's

9   still a real mess what they did as far as the preparation.

10          So, again, I don't want to go over all the stuff

11   that I filed.  If the Court has questions on any specific

12   issues, I'd be happy to answer it but other than that, I'll

13   submit.

14          THE COURT:  Doesn't the breadth of the implied

15   waiver vary with the breadth of the accusation or allegation

16   of ineffective assistance?

17          MR. BURNS:  Sure, I think it is based on the

18   circumstances and I think because of that and because it is

19   inexact and because of the interests that are involved, what

20   Bittaker recommends which really makes a lot of sense and, you

21   know, what Bittaker recommends is sort of encompassed in that

22   order that I submitted from the Central District of California

23   which was drafted by government counsel which is you sort of

24   work out, okay, well, these are the allegations, this is what

25   former counsel thinks that they need to say to rebut them and

1    then at that point when that's been carefully done, if the

2    defendant wants to, he can withdraw a claim so as not to have

3    that waiver implied.  It seems to me perfectly sensible.

4    Would it need to be done in every case, no, but I think in a

5    case like this when you have the obvious conflict between

6    client and former counsel, that proceeding with care is

7    advisable and following that sort of process.

8            You know, if I felt like the declarations were in

9    bounds, I wouldn't be wasting the Court's time with this but I

10   feel like there's some parts of those declarations that are

11   just to me far out of bounds.  You know, we can only sort of

12   judge things based on our own judgment.  Different people may

13   look at them and have a different view but to me it's not

14   close.

15           THE COURT:  All right.  Thank you.

16           MS. CARAPIET:  Your Honor, I'll first address the

17   issue of the implied waiver in the affidavits and then move on

18   to the merits.

19           THE COURT:  Yes.

20           MS. CARAPIET:  If defense counsel actually feared

21   prejudice or harm with respect to the disclosures that the

22   attorneys in this case were bound to make, they should have

23   applied to the Court or the government earlier in this case

24   and the fact that they've waited until this late date just

25   reflects the lack of harm or prejudice here.  They're

1   essentially asking this Court to adopt a procedure that has

2   not been adopted in this circuit.  The Second Circuit is a

3   case specific circuit and they look at the implied waiver in

4   this circuit and then determine how much the attorney should

5   be able to respond and the Second Circuit has primarily left

6   that up to the government and the attorneys who tried the case

7   at trial because they're best suited to make those calls.

8           In this case the defendants have essentially

9   conducted a smear campaign of these attorneys.  They've raised

10  every sort of conversation and detail that these attorneys

11  have ever brought forward between the client and attorneys or

12  in court and they've essentially destroyed these attorneys

13  from head to toe and are now trying to silence them.  When you

14  have disclosures as broad as this, it actually begs a broader

15  reply than the attorneys in this case provided.

16          Mr. Rhodes' and Mr. Stutman's affidavits march

17  through the claims one by one, they track the language in the

18  claims made by the defendant in this case.  They are by no

19  means going into excessive rabbit holes or topics that haven't

20  been raised by the defendant's petition.  To try to silence

21  them at this stage is just a useless application and it is

22  unfair in light of what the defendant has done to these

23  attorneys.

24          Moving to the merits of the petition, we would just

25  remind this Court that habeas is an extraordinary remedy to be

1    used in exceptional circumstances.  It is not warranted in

2    this case.  The defendant has essentially taken a kitchen sink

3    approach to habeas.  He's thrown every claim he can think of

4    at the Court in hopes that something will stick but nothing

5    does.  He's raised no colorable factual or legal questions and

6    as such, his petition should be denied in full, his conviction

7    and his sentence should remain undisturbed.

8          He basically offers five defaulted claims and then

9    an ineffective assistance and an actual innocence claim in an

10   attempt to excuse those defaults.  The ineffective assistance

11   and the actual innocence claims do not meet the rigorous

12   standards required by law.  The actual innocence claim is

13   essentially a multi-year campaign by the defendant to raise

14   some question about his guilt.  He's cited examples of

15   innocent behavior, times when his alibi was at work and he's

16   asking this Court to infer a pattern of innocence from that.

17   That is improper and based on the jury's finding beyond a

18   reasonable doubt that there was a pattern of abuse, the

19   defendant hasn't moved the needle.  To show that he is

20   probably innocent is an incredibly high bar and he simply

21   hasn't done so.  His petition says that it is only likely that

22   this mountain of evidence makes him innocent.  That's hardly a

23   resounding endorsement of an innocent man.

24         He also hasn't proven ineffective assistance of

25   counsel; in other words, he hasn't shown that his counsel was

1   objectively unreasonable in the circumstances that they faced

2   in 2008.  They're imputing 20/20 hindsight in their evaluation

3   of trial counsel but here these were effective attorneys who

4   were thorough in their representation and having spoken to

5   other AUSAs in the office who have repeatedly interacted with

6   particularly Mr. Rhodes, they have nothing but thorough

7   comments to make about these attorneys being good

8   representatives of their clients.

9            In this case it was a he said/she said at bottom

10   and to focus on the first type of evidence in a he said/she

11   said case means looking at the victim's allegations of core

12   abuse and the defendant's own rebuttal of that.  These

13   attorneys focused on that, they sought information and

14   testimony from the victim in earlier Family Court depositions

15   in order to try to impeach her core claims of abuse.

16            They also prepared the defendant rigorously for his

17   testimony, the he said portion of the case.  The rest of the

18   things that might be found by defense counsel in this case are

19   peripheral and circumstantial and that's precisely what the

20   defendant is now offering this Court, peripheral and

21   circumstantial evidence.

22            The attorneys at trial did try to make efforts at

23   obtaining that type of evidence but they were frozen out by

24   the Satmar community and they were denied information by the

25   defendant.  Notably, under Strickland, to the extent that the

1  defendant denies information to his attorneys, the

2  reasonableness of an investigation is directly correlated to

3  that.  The recent emergence of Satmar witnesses and

4  responsiveness of Satmar locations of crime say nothing about

5  the conditions that counsel faced in 2008.  At that time,

6  instead of cooperating and dealing with the reality that this

7  trial was going to happen, the Satmar community and the

8  defendant alike were trying to make the trial stop.  They were

9  besieging this Court with letters pleading that the case go

10  away and they were ignoring all reality when it came to

11  preparing for the case at bar.

12       It is only after the damage has been done, after the

13  defendant has been convicted, after the stain has been put on

14  the Satmar community reputation that these people are coming

15  forward for a second bite at the apple on direct appeal, for a

16  third bite at the apple now, but those changed circumstances

17  indicate exactly why we cannot impute the success that counsel

18  contends they've had today onto counsel in 2008.

19       Additionally, the specific reasons that they have

20  said that counsel are ineffective here do not hold water.  The

21  five claims that they've offered on their core lack merit and

22  so counsel were not ineffective for failing to bring them

23  earlier.

24       We would contend that this Court has already dealt

25  with the constitutionality of this defendant's pro se

1    election, his competency, the voluntariness and

2    constitutionality on both of those ends so we won't

3    reiterate that here.

4            In terms of the statute of limitations, they're

5    making a great to do about something that is very simple.  The

6    defendant was timely indicted under the correct statute of

7    limitations.  Section 3283 is the statute of limitations for

8    child sexual abuse cases and it was properly applied to this

9    child sexual abuse case.  The thrust of this case is that the

10   defendant raped his daughter and that he trotted her around

11   the globe in order to do this.  It is the most perverse sexual

12   abuse case that you can devise and to apply any other statute

13   than the child sexual abuse statute of limitations would be a

14   perverse outcome.  This case is precisely what Congress

15   intended be ensnared by this statute of limitations and to

16   suggest that a five-year statute of limitations is applicable

17   here is absurd.  That would allow people like the defendant to

18   manipulate and abuse their children at an age when their

19   children do not even have the proper vocabulary to come

20   forward and continue to abuse them and then the child might

21   turn 10, 12, 13 years old and suddenly the claim against them

22   is expired.  That's why Congress enacted 3283 for cases like

23   the defendant.

24           The Bridges analysis does not apply here.  That case

25   is about a wartime statute.  It is a suspension of a tolling

1  provision.  It's not a proper statute of limitations on its

2  face.  Congress's intent in enacting it was narrow and it was

3  for wartime purposes only.  It was not for the broad

4  ensnarement of a general category of cases which is what we

5  have here.  So, the defendant's arguments there are

6  inapposite.

7          And regarding the amended version, the 2003 version

8  clearly applies.  As defense counsel pointed out, the statute

9  is clear on its face in saying no other statute of limitations

10 shall preclude prosecution.  At the original enactment that

11 was to encompass all other statute of limitations on the books

12 that might preclude prosecution and that continues to be the

13 case and now that just blankets in the predecessor statute.

14         Congress knows how to list offenses that are

15 involved in a statute.  When you go to Title 18 and look at

16 the statutes of limitations there, very often Congress says

17 offenses involving violations of, and they enumerate the

18 statutes that they cross-reference.  Here they left it

19 intentionally broad.  They knew that there were statutes and

20 violations of law that could be colored as a child sexual

21 abuse case or another type of case and they wanted to ensure

22 that they ensnared all of the sexual abuse varietals.

23         In this situation the 2003 amendment Congress stated

24 was enacted precisely for cases like this one.  They precisely

25 said that in the event that a case is being investigated and

1    is cracked after the victim's 25th birthday, it would be

2    unfair and unjust to let the defendant get out on that

3    technical loophole.  That's exactly what the defendant here is

4    trying to do and this Court should not permit it.

5                That's all that the government has at this time but

6    we're happy to answer questions on any of those points.

7                THE COURT:  All right.  Thank you.

8                Anything further from you?

9                MR. BURNS:  If I may respond to some of those

10   points?

11               THE COURT:  Sure.

12               MR. BURNS:  Regarding the implied waiver and the

13   delay, I mean, you know, I wrote to former counsel, they're

14   the ones that had the ethical obligation before they did this,

15   I don't really think that I can be faulted for having delayed.

16   I think that was actually pretty good foresight, you know, if

17   I may say immodestly.

18               The kitchen sink approach argument; what the

19   government claims is a whole bunch of different claims is

20   actually a whole bunch of evidence that show that these two

21   attorneys weren't prepared and the reason I go through all of

22   these hearings is because at each hearing they demonstrate

23   that they're not prepared and what better evidence that

24   they're not prepared than what's said on the record.  I

25   mean they can dispute what Mr. Weingarten says, what

1   Mr. Weingarten's supporters say, but they have a much harder

2   time disputing what they say on the record and, you know, if

3   you go through that record, there are lot of things but one

4   thing that I think is worthwhile pointing out; the Court, of

5   course, takes their representations at the time that they are

6   prepared and that they know the case at face value and I don't

7   believe that that was true and I think one interesting point

8   that I noticed, just because the government brought it up in

9   their brief, is with respect to -- it was I believe the

10  November bail hearing, it was on November 19th, one of the

11  things that Mr. Stutman said there is, oh, I've been reviewing

12  records of these proceedings from 1999 to 2003, and one of the

13  things the Court relied on in its order in finding that they

14  were prepared is Mr. Stutman said he had been reviewing the

15  records and one of the things that the government cites in its

16  brief said the Court already found that they're prepared and

17  quotes this portion.

18          Well, there weren't Family Court proceedings in

19  1999.  That was Mr. Stutman being mistaken because he didn't

20  know the core facts and those mistakes became even more

21  apparent at the next hearing, December 15th, when Mr. Stutman

22  starts talking about complaints in Family Court proceedings in

23  1993.  He doesn't know the facts because he hasn't reviewed

24  the records.  He doesn't know the basic dates of when

25  important things happened.  I mean these Family Court

1  proceedings in the background are hugely important to

2  understanding what's going on in this case.

3          So, I get faulted for going through the record and

4  pointing out the evidence but it's the evidence.  Those aren't

5  the claims, it's the evidence that these attorneys were

6  unprepared, and I don't really think it would be appropriate

7  for me to hold back on pointing out that evidence.  It is

8  exhaustive, yes, but it is important.

9          The government also begins with the actual innocence

10  claim and says, you know, these are minor arguments or

11  peripheral, peripheral matters.  I mean these are a dozen

12  witnesses at the crime scene in Belgium who are saying she

13  wasn't locked up in the house all the time, I remember seeing

14  her because it was right after Mr. Weingarten's father died

15  and they were coming back to clean up the apartment, she

16  wasn't locked up in the apartment, she seemed fine, she came

17  over her house several times for dinner, Mr. Weingarten was

18  going to synagogue regularly as he always does.  I mean

19  these are, as the Second Circuit said, pretty much alibi

20  witnesses.  I mean Linstadt and Pavel make clear that these

21  are key important witnesses with compelling evidence.  To

22  characterize it as peripheral is just to me astounding.

23          And then the Brooklyn apartment, again you have

24  people right there on the scene in a small apartment in a

25  short period of time where these events supposedly happened.

1   I mean these aren't peripheral witnesses, these are key

2   compelling witnesses.  And, you know, you also, of course,

3   have Feige Weingarten saying to her husband, her subsequent

4   husband after Israel Weingarten that they had made up -- her

5   daughter had made up claims against her husband.

6          I mean this is a lot of important evidence but, you

7   know, the actual innocence claim is really far down the line

8   of the claims because I realize that's the harder one to win

9   on.  There are a lot more compelling claims here than that.

10  That it's chosen first to be addressed by the government I

11  think suggests that they have problems with some of the other

12  claims which they, of course, do.

13         I believe there was a reference in there to these

14  lawyers' former clients or their reputations.  I don't know

15  that we have any evidence on that other than Canales and

16  Canales is a pretty disturbing case that it is hard not to see

17  some parallels with this case regarding just completely not

18  knowing the facts, not doing any investigation and then after

19  the fact blaming your client for what you didn't do.

20         You know, it's interesting because one of the

21  things the government says in its papers is, well, an

22  attorney doesn't have to be a puppet for their client and

23  that's true but the client also can't be held to the standard

24  of being the puppeteer and there's a lot of claims here that,

25  oh, Mr. Weingarten didn't do this, Mr. Weingarten didn't do

1  that.  Mr. Weingarten was detained.  These attorneys had basic

2  obligations.  They had obligations to go to the crime scene

3  two miles away and check it out.  They had obligations to find

4  investigators, they had obligations to find witnesses and,

5  again, some of these witnesses and some of these key witnesses

6  including Josef Chaim Cohen and Liba Berger in Belgium are

7  referenced in the deposition of Frieme Leaieh Weingarten in

8  the Family Court proceedings.

9          You know, a lot of these witnesses even if they

10  didn't talk to Mr. Weingarten at all, they could find them.

11  And Mr. Cohen, he was sort of our gateway to everyone we

12  needed to talk to.  He was a close friend of Mr. Weingarten's,

13  he knew all the people we needed to talk to in Belgium.  Ms.

14  Thorp went over to Belgium, it was very easy to find people.

15  Mr. Lipsman went before her, it was very easy to find people.

16  Mr. Lorandos found almost all these people and got

17  declarations from them in the few weeks following trial.  I

18  mean it just strains credulity to think that Mr. Weingarten

19  and everyone else were hiding all of these witnesses from

20  these two attorneys until after the trial, but that could be a

21  subject of an evidentiary hearing.

22          But I don't think the Court even needs to get there

23  because just based on what these two gentlemen claim, they

24  just didn't do their job, they didn't investigate the case and

25  there was so much there that could be found.  And, you know,

1    that ties back, this recent emergence of these issues, this

2    isn't a recent emergence.  These witnesses were found and

3    submitted declarations in 2009 within a few weeks or eight

4    weeks after the trial, so this is not some recent cooked up

5    thing and to suggest, oh, this is just some long-standing

6    process where Mr. Weingarten keeps coming back and raising new

7    stuff, I mean that's not accurate either, he's said this all

8    along and this is finally his 2255 proceeding where he can

9    litigate these claims and that's what he's doing and to

10   suggest that they're barred is astounding to me too.  I mean

11   the fact of whether or not the attorneys were unprepared is an

12   ineffectiveness issue which the Court specifically said should

13   be litigated now.

14            Regarding the statute of limitations issue, I note

15   that the government counsel didn't say anything about the

16   retroactivity issue, of course.  I mean it just seems to me

17   that one is so clear when you have the statements in other

18   contexts specifically saying this statute of limitations is to

19   be retroactive, but they do say something about the

20   categorical approach and they say Bridges doesn't apply but

21   Bridges is a categorical approach case.  I mean I was a

22   little bit surprised, I kind of thought the categorical

23   approach had grown out of Taylor but, lo and behold, it goes

24   back at least as far as Bridges and that's what they're

25   applying and they say, look, it's involving an offense.

1  You look at what the statute requires, not what's charged.

2  They specifically say that, you don't look at what's charged

3  in the indictment, that's a categorical approach, that's just

4  what it is.  And as we all know, the categorical approach is,

5  you know, writ large in the federal criminal justice system,

6  it comes up in every context probably in, you know, 50 percent

7  of the cases at least, in immigration, in criminal, all over

8  the place, you know, in deciding whether or not the crime is a

9  crime of violence in the Bail Reform Act or whether or not

10  it's appropriate to charge someone in the Juvenile Delinquency

11  Act, it's everywhere in all types of offenses.

12          And the key language in this statute of limitations

13  are "offense" and "involving."  Leocal makes clear "offense"

14  denotes a categorical approach.  James and Nijhawan make clear

15  "involving" denotes a categorical approach.  Once that issue

16  is decided that it's a categorical approach, the government

17  doesn't even make an argument that these two offenses qualify

18  if you conduct a categorical approach.

19          So, it seems to me that both the statute of

20  limitations issues are very, very strong and I don't have

21  anything further, Your Honor.

22          THE COURT:  Thank you.  Thank you both for your

23  advocacy.

24          The petition is denied.  There's a lot that's been

25  said in this petition.  There's some granular detail that's

1    the product of a fine tooth comb examination of the record but

2    really in its essence there's not a whole lot that is said

3    that hasn't been said before and there really isn't a whole

4    lot for me to say in response to it that I didn't say in my

5    May 8th, 2009 memorandum and order.

6              It is a very unusual case in a lot of respects.

7    Chief among them generally is the decision to go pro se but

8    chief among them for purposes of many of the arguments that

9    have been advanced here is a phenomenon that's even more

10   unusual than the defendant's decision to represent himself at

11   trial and I referenced it briefly on page 12 of that

12   memorandum and order I just referenced and that is what I

13   refer to as this off stage force that the defendant described

14   as his people, and I won't repeat what's there, you've read

15   it, you've obviously carefully gone over the record, but I had

16   no doubt at the time and I have no doubt now that that made

17   the representation, that the influence of these unseen folks

18   that Mr. Weingarten referred to as his people made the

19   representation of Mr. Weingarten especially difficult,

20   uniquely difficult and there's a recitation of some of the

21   examples of that in the memorandum and order.

22             I don't think an evidentiary hearing is warranted at

23   all.  I don't think there was ineffective assistance.  I think

24   the government has it right on the statute of limitations

25   arguments on the merits.  And I also think it's true that

1   there's some deference to be accorded to the decisions made by

2   trial counsel who were placed in the crucible by the way their

3   client himself chose to arrange his defense with all these

4   unseen folks and I remember to this day them having to walk

5   outside because there's supposed to be defense witnesses that

6   Mr. Weingarten's people were going to provide but they weren't

7   in the hall.  This case was a nightmare for defense counsel.

8        Only someone who sat in this courtroom during this

9   trial could fully appreciate what I have to say briefly on the

10  actual innocence assertion here.  I don't think anybody in the

11  well of this courtroom except me sat through this trial.  It's

12  not always the case that trial judges and the people who are

13  present when testimony is given have a real peculiar advantage

14  over those who read the cold record, sometimes they don't,

15  sometimes they do, and anybody who sat through that trial has

16  an advantage that in my 30 years in the criminal justice

17  system is unmatched in any other case.

18       It is a very difficult standard, this actual

19  innocence standard, new reliable evidence that wasn't

20  presented that shows more likely than not that no

21  reasonable juror would find the defendant guilty beyond a

22  reasonable doubt.  You could cut the tension in this

23  courtroom with a knife.  I'll go to my grave remembering

24  the victim witness' reaction the first time her father

25  uttered on cross-examination the name Frieme Leaieh and

23

1   you're just going to have to find some other judge than me

2   to ascribe any weight whatsoever to your actual innocence

3   claim.

4          I have no doubt that the defendant and his people

5   and his new lawyers can find people in Belgium who will

6   provide information that might suggest exculpatory evidence.

7   I'm not buying it.  I sat through the testimony, heard the

8   government's evidence.  I'm not buying it.  I think in every

9   dimension these motions, including the motion to strike the

10  challenged attorneys' declarations have no merit whatsoever;

11  so, I'm denying the motion to strike, I'm denying the petition

12  under Rule 2255 there being no substantial showing of a

13  deprivation of a federally protected right.  No certificate of

14  appealability shall issue.

15         Have a good day.

16         MR. BURNS:  Your Honor, may I just address one other

17  thing?

18         THE COURT:  Yes, you can quickly.

19         MR. BURNS:  I referenced in my argument that

20  Frieme Leaieh's deposition mentioned two witnesses.  I don't

21  believe that that's been lodged with the Court.  Is it

22  acceptable if we lodge that with the Court in the next couple

23  of days?

24         THE COURT:  You can file an application to

25  supplement the record and I'll hear from the government.

24

1              MR. BURNS:  It basically --

2              THE COURT:  It sounds fine to me but I have to give

3    the government the process it is due.

4              MR. BURNS:  Okay.  And there's not going to be a

5    written order that will issue, am I correct about that?

6              THE COURT:  No, I just denied your applications.

7              MR. BURNS:  Thank you, Your Honor.

8              THE COURT:  Thank you.

9              MS. CARAPIET:  Thank you, Your Honor.

10             (Time noted:  12:25 p.m.)

11             (End of proceedings.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25